IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ELIZABETH A. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| HINSON-TADLOCK PEST | ) | |
| CONTROL COMPANY, INC. d/b/a | ) | JURY TRIAL DEMANDED |
| TADLOCK PEST CONTROL and | ) | |
| JAMES EDWIN TADLOCK, individually | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## INTRODUCTION

COMES NOW Elizabeth Thompson, Plaintiff in the above styled matter and files this Complaint for damages, and in support of this Complaint shows the Court as follows, to wit:

## SUMMARY OF ACTION

1.

This is an action for damages against Defendants arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

## JURISDICTION

2.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 in

that it involves a Federal question arising under the laws of the United States.

PARTIES

3.

Plaintiff in this case is an adult female citizen of the United States and the State of Georgia.

4.

Corporate Defendant (hereafter "Tadlock") in this case is a DOMESTIC corporation.  It has its registered office P.O. Box 4184, Columbus, Georgia 31904. Defendants maintain a place of business in Columbus, Muscogee County, Georgia, where most, if not all of the events relevant to the instant action occurred.  The Corporate Defendant may be served with process at the office of its registered agent for service of process:  Hinson-Tadlock Pest Control Company, Inc. c/o James Edwin Tadlock, 1162 Neill Dr., Columbus, Georgia 31904.

5.

Defendant, James Edwin Tadlock, hereafter "Jimmy Tadlock" is, upon knowledge and belief, a resident of Phenix City, Russell County, AL but transacts business in Muscogee County, Middle District, Georgia and may be personally served at the Columbus, Georgia location of Tadlock Pest Control at 1162 Neill Dr., Columbus, Georgia 31904.

VENUE

6.

Venue in this case is proper under 28 U.S.C. § 1391(b) in that the Corporate Defendant maintains plant facilities in this judicial district and/or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

ADMINISTRATIVE REQUIREMENTS

7.

Because this is an action for unpaid wages and overtime under the FLSA, there are no administrative requirements to exhaust before the filing of the instant action.

FACTS

8.

Plaintiff in this case is a female citizen of the United States and of the State of Georgia.  For purposes of this action, she submits herself to the jurisdiction of the Court.

9.

Plaintiff became employed by Defendants on or about February 14, 2003 and was employed by Defendants during the operative period from May 13, 2016 through May 13, 2016. This makes a total of 156 weeks in Defendants' employ during the operative period.

10.

At all times relevant to this suit, Plaintiff has been an "employee" of Tadlock as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

11.

At all times material hereto, Plaintiff has been "engaged in commerce" as an employee of Defendants as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

12.

At all times material hereto, Tadlock has been an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

13.

At all times material hereto, Tadlock was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

14.

During 2013, Tadlock had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

15.

During 2014, Tadlock had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

16.

During 2015, Tadlock had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

17.

During 2016, TADLOCK had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

18.

During 2013, TADLOCK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

19.

During 2014, TADLOCK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

20.

During 2015, TADLOCK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

21.

During 2016, TADLOCK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

22.

During 2013, TADLOCK had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

23.

During 2014, TADLOCK had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

During 2015 TADLOCK had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2016, TADLOCK had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

At all times material hereto, TADLOCK was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

27.

TADLOCK is subject to the personal jurisdiction of this Court.

28.

Defendant James E. Tadlock resides within Russell County, Alabama.

29.

"Jimmy" is the President of, and sets the policies and procedures regarding employee compensation, and is responsible for the classification or misclassification of hourly/non-exempt employees such that neither he, nor his company, will have to pay overtime that is otherwise required and authorized pursuant to law.  He is an employer as defined by the FLSA.

30.

At all times material hereto, Jimmy exercised operational control over the work activities of Plaintiff.

31.

At all times material hereto, Jimmy was involved in the day to day operation of TADLOCK.

32.

At all times material hereto, TADLOCK vested Jimmy with supervisory authority over Plaintiff.

33.

At all times material hereto, Jimmy exercised supervisory authority over Plaintiff.

34.

At all times material hereto, Jimmy set routes that determined Plaintiff's working hours or supervised the scheduling of Plaintiff's working hours.

35.

At all times material hereto, Jimmy exercised authority and supervision over Plaintiff's compensation.

36.

At all times material hereto, Jimmy has been an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

37.

Jimmy is subject to the personal jurisdiction of this Court.

38.

At all times material hereto, Plaintiff was not exempt from the maximum

hour requirements of the FLSA by reason of any exemption set forth in 29 U.S.C.

§ 213.

39.

At all times material hereto, Plaintiff was not employed in a bona fide

executive capacity within the meaning of 29 U.S.C. § 213 (a).

40.

At all times material hereto, Plaintiff was not employed in a bona fide

administrative capacity within the meaning of 29 U.S.C. § 213 (a).

41.

At all times material hereto, Plaintiff was not employed in a bona fide

professional capacity within the meaning of 29 U.S.C. § 213 (a).

42.

At all times material hereto, Plaintiff was not employed in the capacity of an

"outside salesman" so as to be exempt from the minimum and maximum hour

requirements of 29 U.S.C. § 213 (a), as service constituted the overwhelming

majority of her duties.

43.

TADLOCK currently has several employees: pest control technicians, such as

Plaintiff, termite control technicians, clerical employees, and a general manager ("Jimmy") TADLOCK's.

44.

As a pest control technician spend the majority of her working hours treating homes and commercial businesses in a multi county area in Georgia and in Russell and Lee Counties in the state of Alabama.

45.

TADLOCK supplied Plaintiff with various equipment for performance of her job, including: a back pack sprayer, electric dusters, water bottles, bate guns, spray gun for use inside, a separate spray gun for outside, chemicals, and a company truck. Plaintiff used a cell phone in connection with her work that TADLOCK paid for however, Plaintiff was responsible for all related fees.

46.

In connection with servicing customer's homes and businesses, pest control technicians such as Plaintiff, and Plaintiff specifically, performed the following tasks:

a) Spray chemical solutions, powders, and gases on or near surfaces of a building or house to eliminate pests.

b) Identify invading pests, including rats, termites, snakes, wasps, ants, spiders, mosquitos, or bed bugs.

c)  Set mechanical traps and place bait.

d)  Remove dead rodents after extermination.

e)  Ensure house or building is empty when product is applied.

f)  Air out residence after application.

g)  Identify damage to property.

h)  Inspect property to ascertain wall and roof porosity and possible sites of pest invasion.

i)  Access infested locations.

j)  Cut or bore into buildings to access infested areas.

k)  Pore pesticides over location.

l)  Clean and remove pesticides after application.

m) Study preliminary reports and diagrams of infested area and determine treatment type required to eliminate and prevent recurrence of infestation.

n)  Measure area dimensions requiring treatment.

o)  Clean and remove blockages to facilitate application.

p)  Position and fasten edges of tarpaulins over building and tape vents to ensure air-tight environment and check for leaks.

q)  Directly perform application off insecticides and chemicals.

r)  Check for possible leaks or exposure.

s)  Utilize appropriate protective gear and equipment during application.

t) Power-spray chemicals onto surfaces.

47.

Additionally, Plaintiff's duties entailed picking up chemicals at
TADLOCK's corporate office as needed; filling up the water tanks on the company
truck; retrieving customer phone messages from the corporate office; scheduling
appointments; and dropping off daily worksheets at the office.

48.

During her employment with TADLOCK, Plaintiff had a roster of in excess
of 200 customer accounts, but an account might be 50-60 apartment units, and she
was responsible for preparing a weekly service schedule.  Plaintiff typically serviced
her customers' homes and/or businesses during the first three weeks of each month,
leaving the last week of each month for rescheduling appointments. Plaintiff
occasionally and infrequently solicited a new customer, if she received a referral
from an existing customer. Plaintiff made some any out of state work-related calls.
On any given day, as a pest control technician Plaintiff would spend no more than
fifteen minutes on her cell phone speaking to customers, all of whom where within
Georgia and Alabama.

49.

During the operative period Plaintiff's annual income averaged $28, 000.

50.

Plaintiff did not receive an hourly salary; instead TADLOCK paid her a commission of 30% on all gross revenues collected from her customers.  If based on a forty-hour week, Plaintiff's annual income averaged $14.00 per hour.

51.

Plaintiff, however, averaged working sixty hours per week during the operative period or $9.34/hr.

52.

Considering only the latter, Plaintiff should have earned $14.01 for twenty hours per week.

53.

Plaintiff was illegally not paid $83.40 per week for three years, or $14,570.40.

54.

Plaintiff, upon knowledge and belief, earned less per hour than similarly situated males.

55.

Should that outcome be revealed in discovery, it is anticipated that Plaintiff will seek leave to amend this petition to reflect wage calculations incorporating such amounts pursuant to 29 U.S.C. § 206(d) (The Equal Pay Act of 1963).

## THEORIES OF RECOVERY

## COUNT I — FAILURE TO PAY OVERTIME

### 56.

Plaintiff was employed by Defendants from May 13, 2013 until May 13, 2016 during the operative period. This makes a total of 156 weeks in Defendants' employ.

### 57.

Plaintiff normally worked 10-12 hours daily, Monday through Friday during the entire period of her employment with Defendants.  As a result, Plaintiff would accrue no less than 20 hours per week of overtime for which she was not compensated.  Plaintiff was expected to arrive by 7:30 a.m. or before, and would oft times not leave from work until well after 8:30 p.m.  Many times she would work through her lunch hour.

### 58.

Plaintiff was a non-exempt hourly worker, yet she was not compensated for the 20 hours per week of overtime which she worked while in Defendants' employ.

### 59.

As set out above, Plaintiff was in Defendants' employ for 156 weeks during the operative period. During each of those 156 weeks she worked at least 20 hours

of overtime for which she was not compensated at the legally mandated rate of 1.5 times her normal hourly wage.

60.

Because she was a non-exempt, hourly employee and not properly an exempt, salaried employee, Plaintiff should have been compensated for the 20 hours of overtime she worked each week at the differential rate of $4.67/per hour for the 156 weeks she worked for Defendants in the operative period. This is expressed as follows:

20 hrs. per wk. x $4.67 per hr. x 156 wks.= $14,570.40 in unpaid overtime.

61.

As a result of Defendants' failure to properly pay Plaintiff her overtime wages in accordance with the law, Plaintiff is entitled to liquidated damages under the FLSA, said liquidated damages being equal to the amount of the unpaid overtime wages due and owing, in addition to the unpaid overtime wages. This is expressed as follows:

$14,570.40 x 2 (Liq. Dam. multiplier under FLSA) = $29,140.08.

62.

Plaintiff is also entitled to attorney's fees and costs under the FLSA, which are an amount to be determined as litigation progresses.

63.

Plaintiff's job description while in the employ of Defendants was Pest
Control Technician.

64.

Plaintiff's job duties on a normal business day consisted of, *inter alia:*

65.

None of Plaintiff's duties with Defendants bring her within the ambit of a
recognized legal exemption to the requirement that she be paid minimum wage and
overtime; therefore, by failing to pay Plaintiff for overtime that she worked,
Defendants are in violation of the FLSA.  Plaintiff is entitled to her litigation costs,
including reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. §
216(b).

66.

Defendants' actions were intentional, not excusable in fact or law, and
Plaintiff is entitled to seek recovery for three years.

**COUNT II-ATTORNEY'S FEES and EXPENSES**

67.

Plaintiff is entitled to the costs and expenses associated with bringing and
prosecuting this action, to include attorney's fees, pursuant to 29 U.S.C. § 1610(b).

PRAYERS FOR RELIEF

Wherefore, Plaintiff respectfully prays as follows:

a)   that Summons issue and Defendants be served as by law provided;

b)   that Plaintiff be awarded judgment in her favor with respect to all contentions in her Complaint;

c)   that Plaintiff be awarded actual and liquidated damages as proven at trial;

d)   that Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

e)   that all costs of this action be taxed to Defendants; and

f)   for such other and further relief as unto this Court may seem just and equitable in the premises.

This 6th day of September, 2016.

/S/John W. Roper
John W. Roper
Georgia Bar No. 614159

The Roper Law Firm
5353 Veterans Parkway, Suite D
Columbus, Georgia 31904
(706) 593-5353
Fax: (706) 596-5383
johnroper@roperlaw.com